**BENNETT, et al., Plaintiffs,**

v.

**CITY OF ATLANTIC CITY, et al., Defendants.**

**Civil Action No. 03–823 (JEI).**

United States District Court, D. New Jersey.

Oct. 31, 2003.

---

Donnamarie Davis, Esq., Frost & Zeff, Cherry Hill, NJ, for Plaintiffs.

Lisa Dorio–Ruch, Esq., Office of the Attorney General of New Jersey, Trenton, NJ, for Defendants the State of New Jersey Department of Personnel and the Merit System Board.

Karen M. Williams, Esq., Jasinski & Williams, Atlantic City, NJ, for Defendants City of Atlantic City and Benjamin Brenner.

## OPINION

IRENAS, Senior District Judge.

This case comes before the Court on Defendants' motion to dismiss Plaintiffs' complaint pursuant to Fed.R.Civ.P. 12(b)(1) for a lack of subject matter jurisdiction. Defendants argue that they are immune from suit under the Eleventh Amendment. This Court has jurisdiction over the matter pursuant to 28 U.S.C. §§ 1331, 1343 and 1367.

### I.

Plaintiffs, who include both current firefighters with the City of Atlantic City Fire Department ("Fire Department" or "Department") and persons who unsuccessfully applied for firefighter positions with the Department, brought suit against the State of New Jersey Department of Personnel ("DOP") and the Merit System Board ("MSB") (collectively referred to as the "State Defendants"), the City of Atlantic City ("City"), and the Fire Chief for the City, Benjamin Brenner ("Brenner") alleging racial discrimination in hiring and promotion.

Prior allegations of discrimination in New Jersey's fire departments in the 1970's resulted in the United States government bringing suit against the State of

New Jersey and its cities for allegedly engaging in a pattern of discrimination in firefighter hiring and promotions. *See United States v. State of New Jersey, et al.,* United States District Court for the District of New Jersey, Civil Action Numbers 77–2054 and 79–184. On May 30, 1980, the parties to that suit entered into a consent decree ("Consent Decree") designed to prevent unlawful discrimination on the basis of race, color or national origin by promoting the hiring and advancement of minority firefighters throughout the State. Today, Plaintiffs allege that the goals of the consent decree have not been met. Specifically, Plaintiffs allege that Defendants have: engaged in ongoing discrimination in both the creation and scoring of firefighter hiring and promotional exams given by the DOP in 2000; segregated certain fire houses and tours; enforced disciplinary violations more harshly for minority firefighters; and condoned racism in the ranks.

On the basis of these allegations, Plaintiffs filed a five-count complaint with this Court on February 25, 2003. Counts I, II and V allege violations of Plaintiffs' civil rights under 42 U.S.C. §§ 1983, 1981 and 1985, respectively. Count III alleges violations of the New Jersey Law Against Discrimination ("NJLAD"), N.J.S.A. 10:5–12(a) *et seq.* Count IV alleges that Defendants are in violation of the 1980 Consent Decree. Plaintiffs request that this Court enter a declaratory judgment against Defendants on all counts, enjoin Defendants from continuing the allegedly discriminatory practices, require Defendants to comply with the Consent Decree, and award both compensatory and punitive damages, costs and fees.

On May 16, 2003, State Defendants filed a pre-answer motion to dismiss for lack of subject matter jurisdiction pursuant to Fed.R.Civ.P. 12(b)(1). In a letter dated July 10, 2003, Defendants Atlantic City and Brenner joined the State Defendants' motion.

## II.

A motion to dismiss on the basis of Fed.R.Civ.P. 12(b)(1) for lack of subject matter jurisdiction made prior to the filing of the defendant's answer is a facial challenge to the complaint.[1] *See Mortensen v. First Fed. Sav. & Loan Ass'n,* 549 F.2d 884, 891 (3d Cir.1977); *Courtney v. Choplin,* 195 F.Supp.2d 649, 650 (D.N.J.2002). Review of a facial challenge in this context is similar to review of a 12(b)(6) motion and requires the Court to accept the allegations in the complaint as true. *See Mortensen,* 549 F.2d at 891; *Courtney,* 195 F.Supp.2d at 650. Therefore, the Court views the Complaint in the light most favorable to Plaintiffs. *Mortensen,* 549 F.2d at 891.

## III.

### A.

Defendants argue that this Court lacks subject matter jurisdiction over

---

**1.** Although State Defendants have not yet answered Plaintiffs' complaint, Defendants Atlantic City and Brenner have. Had Brenner and the City brought a separate motion to dismiss, their motion would not have been a facial challenge. In a post-answer challenge to subject matter jurisdiction,

> no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the

trial court from evaluating for itself the merits of jurisdictional claims. Moreover, the plaintiff will have the burden of proof that jurisdiction does not in fact exist.

*Mortensen,* 549 F.2d at 891; *see also Courtney,* 195 F.Supp.2d at 650. Because Defendants Atlantic City and Brenner have joined in State Defendants' motion, however, the Court will treat the entire motion as a facial challenge.

Plaintiffs' claims because Defendants are immune from suit pursuant to the Eleventh Amendment. Eleventh Amendment immunity is an affirmative defense and requires Defendants to bear the burden of showing that they are entitled to immunity. *Christy v. Pa. Turnpike Comm'n,* 54 F.3d 1140, 1144 (3d Cir.1995). The Eleventh Amendment provides that: "the Judicial power of the United States shall not be construed to extend to any suit in law or equity commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any foreign state." U.S. Const. amend. XI. The underlying purpose of the Amendment is to "afford the States the dignity and respect due sovereign entities." *Fed. Mar. Comm'n v. S.C. State Ports Auth.,* 535 U.S. 743, 765, 122 S.Ct. 1864, 152 L.Ed.2d 962 (2002); *see also Seminole Tribe of Fla. v. Fla.,* 517 U.S. 44, 54, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996); *P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.,* 506 U.S. 139, 146, 113 S.Ct. 684, 121 L.Ed.2d 605 (1993); *In re State of New York,* 256 U.S. 490, 497, 41 S.Ct. 588, 65 L.Ed. 1057 (1921).

To this end, the United States Supreme Court has consistently "held that the sovereign immunity enjoyed by the States extends beyond the literal text of the Eleventh Amendment." *Fed. Mar. Comm'n,* 535 U.S. at 754, 122 S.Ct. 1864. Although the text expressly bars only suits in federal court against States by citizens of other States and foreign states, the Amendment has been broadly interpreted to prohibit nearly all suits by private individuals, regardless of that individual's citizenship. *See, e.g., Bd. of Tr. of Univ. of Ala. v. Garrett,* 531 U.S. 356, 363, 121 S.Ct. 955, 148 L.Ed.2d 866 (2001) (finding that the "ultimate guarantee of the Eleventh Amendment" is to protect non-consenting States from suits by private individuals in federal court); *Employees of the Dep't of Pub. Health & Welfare v. Dep't of Pub. Health & Welfare,* 411 U.S. 279, 280, 93 S.Ct. 1614, 36 L.Ed.2d 251 (1973) (stating that "it is established that an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another State"). This sweeping immunity "applies regardless of whether a private plaintiff's suit is for money damages or some other type of relief." *Fed. Mar. Comm'n,* 535 U.S. at 765, 122 S.Ct. 1864; *see also Seminole Tribe,* 517 U.S. at 58, 116 S.Ct. 1114 (finding the type of relief sought "irrelevant to the question whether the suit is barred by the Eleventh Amendment").

■ The breadth of state sovereign immunity protects not only states, but expands to protect entities and persons who can show that, even though the State is not the named defendant, "the state is the real, substantial party in interest." *Ford Motor Co. v. Dep't of Treasury,* 323 U.S. 459, 464, 65 S.Ct. 347, 89 L.Ed. 389 (1945); *see also Ex parte New York,* 256 U.S. 490, 500, 41 S.Ct. 588, 65 L.Ed. 1057 (1921) (noting that immunity is to be determined "not by the mere names of the titular parties but by the essential nature and effect of the proceeding, as it appears from the entire record"). The State is the real party in interest " 'if the judgment sought would expend itself on the public treasury or domain, or interfere with the public administration,' ... or if the effect of the judgment would be to 'restrain the Government from acting, or compel it to act.' " *Dugan v. Rank,* 372 U.S. 609, 620, 83 S.Ct. 999, 10 L.Ed.2d 15 (1963) (internal citations omitted); *see also Hindes v. F.D.I.C.,* 137 F.3d 148, 165 (3d Cir.1998).

■ Under this framework, state agencies and state officials acting in their official capacities are routinely afforded Eleventh Amendment immunity. *See Will v.*

*Mich. Dep't of State Police,* 491 U.S. 58, 70–71, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989)(finding that "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office" and "[a]s such, it is no different from a suit against the State"); *Fitchik v. N.J. Transit Rail Operations, Inc.,* 873 F.2d 655, 658 (3d Cir.1989), *cert denied,* 493 U.S. 850, 110 S.Ct. 148, 107 L.Ed.2d 107 (1989) (finding that "[a] state agency is entitled to immunity from suit in federal court under the Eleventh Amendment when a judgment against it would have had essentially the same practical consequences as a judgment against the State itself") (internal citation omitted); *Johnson v. N.J. Transit Rail Operations, Inc.,* No. 87–173, 1988 WL 24148 (D.N.J. Mar.15, 1988) (barring a suit against defendant transportation agency which was deemed an "arm of the state"). The same protection is not, however, generally afforded to "municipalities and other political subdivisions of a State." *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.,* 532 U.S. 598, 609 n. 10, 121 S.Ct. 1835, 149 L.Ed.2d 855 (2001); *see also Mt. Healthy City Bd. of Ed. v. Doyle,* 429 U.S. 274, 280, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977) (noting that the Eleventh Amendment does not extend to "counties and similar municipal corporations" unless the entity is an "arm of the State").

### B.

■ Broad as Eleventh Amendment immunity is, however, it is not absolute.

Two relevant exceptions to the doctrine exist.[2] First, a state can consent to suit. *See Blatchford v. Native Village of Noatak & Circle Village,* 501 U.S. 775, 779, 111 S.Ct. 2578, 115 L.Ed.2d 686 (1991). State consent, however, is construed narrowly and exists only where the State "makes a 'clear declaration' that it intends to submit itself" to a court's jurisdiction. *Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.,* 527 U.S. 666, 675–76, 119 S.Ct. 2219, 144 L.Ed.2d 605 (1999) (internal citation omitted); *see also Atascadero State Hosp. v. Scanlon,* 473 U.S. 234, 241, 105 S.Ct. 3142, 87 L.Ed.2d 171 (1985) (characterizing the test to determine if a state has waived immunity as "stringent"). Anything less than an express and unequivocal waiver of immunity is insufficient to subject a State to suit. *Pennhurst,* 465 U.S. at 99, 104 S.Ct. 900 (requiring that "a State's consent must be unequivocally expressed").

■ Second, Congress can abrogate sovereign immunity for suits brought pursuant to federal statutes if it "authorizes such a suit in the exercise of its power to enforce the Fourteenth Amendment." *Coll. Sav. Bank,* 527 U.S. at 670, 119 S.Ct. 2219; *see also Kimel v. Fla. Bd. of Regents,* 528 U.S. 62, 73, 120 S.Ct. 631, 145 L.Ed.2d 522 (2000) (noting that " 'Congress may abrogate the States' constitutionally secured immunity from suit in federal court only by making its intention unmistakably clear in the language of the statute' " (internal citations omitted)). Such an abrogation, however, must be an "unequivocal expression of congressional

---

**2.** A third exception allows suits against state officials in their official capacities where Plaintiff seeks prospective, injunctive relief for violations of federal law. *See Ex Parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908) (holding that suits against state officials for violations of federal law that request prospective injunctive relief are permissible

under the Eleventh Amendment); *Pennhurst,* 465 U.S. at 102–03, 104 S.Ct. 900; *Edelman v. Jordan,* 415 U.S. 651, 666–667, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974). However, because Plaintiffs' have not brought suit against a state official, this exception is not relevant in this matter.

intent to 'overturn the constitutionally guaranteed immunity of the several States.'" *Pennhurst*, 465 U.S. at 99, 104 S.Ct. 900 (internal citation omitted).

### C.

■ As noted above, to determine if state agencies, officials or political subdivisions are arms of the state entitled to immunity under the Eleventh Amendment, the Court must examine: (1) whether payment of a judgment would come from the state treasury; (2) the status of the entity under state law; and (3) the entity's degree of autonomy. *Chisolm v. McManimon*, 275 F.3d 315, 323 (3d Cir.2001)(citing *Fitchik*, 873 F.2d at 659) (en banc). Although no one factor is determinative, the first factor is generally deemed the most important. *See, e.g., Chisolm*, 275 F.3d at 323; *Carter v. City of Phila.*, 181 F.3d 339, 347 (3d Cir.1999); *Christy*, 54 F.3d at 1140; *Fitchik*, 873 F.2d at 659–60.

### 1.

■ In the instant case, the State Defendants are eligible for Eleventh Amendment immunity on all five counts of Plaintiffs' complaint. The New Jersey Department of Personnel and the Merit System Board are agencies within the executive branch of the New Jersey state government. *See* N.J.S.A. 11A:2–1 (2003) (establishing within the "Executive Branch of State government a principal department which shall be known as the Department of Personnel, which shall consist of a Merit System Board, a Commissioner of Personnel, subdivisions and officers and employees"). Given the State Defendants' status under state law as part of the state executive branch, any monetary judgment against them would be paid by the state treasury. Nothing in the record indicates that the DOP or MSB have any autonomy from the executive branch. Therefore, the State Defendants are an arm of the State and entitled to Eleventh Amendment immunity, provided the State has not waived its immunity and that Congress has not abrogated it.

■ In contrast, neither the City nor Brenner is immune from suit. First, the City is a separate political entity from the state. Although all cities are subject in some way or another to state laws and regulations, they still retain enormous autonomy to govern their own finances, maintain safety and public order, and to create, fund and maintain departments and offices needed to carry out vital functions. *See* N.J.S.A. Const. Art. 4, § 7, ¶ 11 (stating that the "powers of counties and municipal corporations shall include not only those granted in express terms but also those of necessary or fair implication, or incident to the powers expressly conferred, or essential thereto, and not inconsistent with or prohibited by this Constitution or by law"); N.J.S.A. 40:48–1 (2003)(explicating the general and regulatory powers of municipal government). The City has presented no evidence that shows, in light of this autonomy, that a judgment against it would be paid by the State treasury rather than with city monies. Nor has the City proven that it lacks meaningful autonomy. The fact that City firefighters are career civil employees whose hiring and promotional tests are established and administered by the DOP, does not establish the level of enmeshment required to give the City immunity from suit in federal court.[3]

---

**3.** The DOP has the authority to announce, administer and rate firefighter examinations and the city is bound by the DOP eligibility rosters. *See* N.J.S.C. 11A:4–1 (2003) (stating that the DOP commissioner "shall" announce, administer and rate examinations which test the "knowledge, skills and abilities required to satisfactorily perform the duties of

*See Pennhurst,* 465 U.S. at 123–24, 104 S.Ct. 900 (barring suit against a county where funding for programs serving the mentally handicapped came "almost entirely from the state" and where there was extensive state and county cooperation in operating the programs); *Camden County Recovery Coalition v. The Camden City Bd. of Ed. for the Pub. Sch. Sys.,* 262 F.Supp.2d 446, 449–50 (2003) (finding that a school board was an arm of the State for Eleventh Amendment purposes where "the vast majority" of the funding for city schools came from the state and the state exercised significant control over the board's activities, including the power to appoint one-third of the board members and the power to veto board action).

It is also clear that Defendant Brenner is a city, not a state official. Brenner is appointed by the City of Atlantic City and reports to the Director of Public Safety. *See* N.J.S.A. 40A:14–7 (2003) (granting authority to municipalities to establish fire departments and to "appoint such members, officers and personnel as shall be deemed necessary, determine their terms of office, fix their compensation and prescribe their powers, functions and duties and adopt and promulgate rules and regulations for the government of the department and force and for the discipline of its members"). A judgment against Brenner in his official capacity as fire chief would be paid by the City, not by the State. With respect to Brenner's status under

State law, nothing in the record indicates that Brenner is appointed by the State, that he reports to State officials directly, or that the State holds the power to terminate his position. Therefore, Brenner is not a state official protected by sovereign immunity under the Eleventh Amendment.

Because neither the City nor Brenner are entitled to Eleventh Amendment immunity, the Court will deny their motion to dismiss Plaintiffs' complaint.[4]

2.

■ Having found that the State Defendants are eligible for Eleventh Amendment immunity, the Court must now determine if the State has waived, or if Congress has abrogated, that immunity. First, State waivers of the Eleventh Amendment must be express and unequivocal. Plaintiffs assert that by entering the 1980 Consent Decree, the State expressly waived its Eleventh Amendment immunity for federal civil rights claims alleging discrimination in firefighter hiring and promotion. The specific language of the decree requires that "in cases of disagreement between the affected defendants and the plaintiff United States concerning a resolution for any such individual claim of liability or relief, either party may apply to the court for resolution of the matter at issue." This agreement is not the type of explicit waiver needed to subject the State to this Court's jurisdiction for federal civil rights claims brought twenty years after the de-

a title or group of titles"); N.J.S.C. 11A:4–4 (2003) (requiring the commissioner to establish eligibility lists); N.J.A.C. 4A:1–1 *et seq.*

**4.** The City and Brenner also argue that if Plaintiffs' claims against the State Defendants are dismissed, the suit against Brenner and the City should be dismissed for lack of necessary and indispensable parties under Fed. R.Civ.P. 19(b). Even considering the role of the State as a party to the 1980 Consent Decree and the State Defendants' role in es-

tablishing hiring and promotional tests and eligibility for firefighters, the Court is unpersuaded that Brenner and the City will be unable to defend themselves against Plaintiffs' claims without the State Defendants. Therefore, the Court declines to dismiss Plaintiffs' complaint on this ground.

As will be discussed in section III(B)(2), however, Count IV of Plaintiffs' complaint will be dismissed for lack of standing.

cree was signed and brought by Plaintiffs who are not parties to the decree. *See Vulcan Pioneers of N.J. v. City of Newark,* Civ. No. 02–5802, slip op. at 7–8 (D.N.J. May 27, 2003) (finding that "New Jersey did not make a 'clear declaration' that it intended to submit itself to federal jurisdiction over various civil rights claims brought by Plaintiffs in 2003 when it waived its immunity in 1977 and agreed to the Consent Decree in 1980").

 Although entering into the Consent Decree is not a waiver for the purposes of Plaintiffs' federal civil rights claims, an argument could be made that entering into the Decree waived the State's immunity for Count IV of Plaintiffs' complaint, which challenges Defendants' compliance with the Decree. The Court need not address whether the State waived its immunity, however, because Plaintiffs do not have standing to bring the claim. It is well-established that only parties to a consent decree may enforce it. *See Blue Chip Stamps v. Manor Drug Stores,* 421 U.S. 723, 750, 95 S.Ct. 1917, 44 L.Ed.2d 539 (1975) (expressly stating that a "consent decree is not enforceable directly or in collateral proceedings by those who are not parties to it even though they were intended to be benefitted by it"); *Coca–Cola Bottling Co. of Elizabethtown, Inc. v. Coca–Cola Co.,* 988 F.2d 386, 398–99 (3d Cir.1993). Although non-parties may "initiate proceedings in a separate action to challenge actions taken pursuant to the consent decree where those actions support a claim for violation of constitutional rights or other federal law," they are barred from suing under the decree itself.[5] *Township of S. Fayette v. Allegheny County Hous. Auth.,* 27 F.Supp.2d 582, 595 (W.D.Pa.1998).

The State also has not explicitly waived Eleventh Amendment immunity for claims brought in federal court under the NJLAD, N.J.S.A. 10:5–12(a). The NJLAD does not contain the express language required to waive the State's immunity from suit in federal court, therefore, State Defendants retain their immunity. *See Rudolph v. Adamar of N.J., Inc.,* 153 F.Supp.2d 528, 540–44 (D.N.J.2001) (noting that nothing in the text of the NJLAD "addresses, much less expressly waives, the State's Eleventh Amendment immunity" and further noting that the New Jersey Tort Claims Act, N.J.S.A. 59:1–1 *et seq.* expressly reserves State immunity in its "legislative and executive capacities").[6]

 Nor has there been Congressional abrogation of the State's immunity. As to Plaintiffs' federal claims, the United States Supreme Court has clearly stated that 42 U.S.C. § 1983 does not "override States' Eleventh Amendment immunity." *Quern v. Jordan,* 440 U.S. 332, 342, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979). Specifically, the Supreme Court held that "neither a State nor its officials acting in their official capacities are 'persons' under § 1983" and, therefore, States and state officials are

---

**5.** Plaintiffs attempted to cure their lack of standing by moving to intervene in the ongoing litigation surrounding the Consent Decree, *United States v. State of New Jersey, et al.,* Civil Action Nos 77–2054 and 79–184 currently before the District Court. On September 22, 2003, however, Judge William H. Walls denied Plaintiffs' motion to intervene. Therefore, Plaintiffs do not have standing to challenge the consent decree and the Court will grant Defendants' motion to dismiss.

**6.** The Court also notes that once Plaintiffs' federal claims are dismissed, the Court does not have supplemental jurisdiction over the pendant state law claim brought against State Defendants. *See Raygor v. Regents of the Univ. of Minn.,* 534 U.S. 533, 122 S.Ct. 999, 152 L.Ed.2d 27 (2002) (holding that a non-consenting State has Eleventh Amendment immunity for all pendant state claims brought to federal court pursuant to 28 U.S. § 1367).

**684**

immune from suit under § 1983. *Will,* 491 U.S. at 71, 109 S.Ct. 2304; *see also Rudolph,* 153 F.Supp.2d at 534. Congress has similarly not abrogated State immunity under 42 U.S.C. § 1981 or 1985. *See Cimino v. Del. Dep't of Labor,* 2002 WL 265095, *4–5, 2002 U.S. Dist. LEXIS 2979, *14–15 (D.Del. Feb. 25, 2002); *Carmen v. Unified Sch. Dist.,* 982 F.Supp. 1396, 1404 (N.D.Cal.1997); *Henry v. Texas Tech. Univ.,* 466 F.Supp. 141, 146 (N.D.Texas 1979); *Seeney v. Kavitski,* 866 F.Supp. 206, 209–10 (E.D.Pa.1994) (citing *Quern,* 440 U.S. at 346, 99 S.Ct. 1139); *Parents for Quality Ed. v. Fort Wayne Cmty. Sch.,* 662 F.Supp. 1475, 1480 (1987).

Therefore, because State Defendants have not waived their Eleventh Amendment immunity, nor has Congress abrogated it, Counts I, II, III and V of Plaintiffs' complaint are barred as against the State Defendants. In contrast, because neither the City nor Brenner can claim immunity from suit, Counts I, II, III, and V of Plaintiffs' complaint may proceed against the City and Brenner. However, because Plaintiffs do not have standing to enforce the 1980 Consent Decree, the Court will dismiss Count IV of Plaintiffs' complaint as to all Defendants.

## IV.

For the reasons detailed in this opinion, all Counts in the Plaintiffs' complaint will be dismissed as to the New Jersey Department of Personnel and the Merit Systems Board. Count IV will also be dismissed as against the City of Atlantic City and Benjamin Brenner. All remaining Counts against the City and Brenner may proceed. The Court will issue an appropriate order.